IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Joseph Wojcicki, | ) | C/A No. 1:06-461-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Aiken Technical College; Ms. Susan A. Winsor, ex Graham ATC president; Mr. William Tilt, Associate Vice President of Technical Education; Mr. Thomas DesRocher, Program Coordinator; and Mr. Lee Powell, Human Resources Director, | ) ) ) ) ) ) ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Joseph Wojcicki ("Wojcicki"), a self-represented litigant, filed this matter alleging violations of his "civil-human rights" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq.; and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, et seq. Wojcicki also appears to assert claims arising under state law. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the parties' cross motions for summary judgment and Wojcicki's motions for default judgment. (ECF Nos. 174, 179, 208, & 212.)[1] Following the issuance of an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Wojcicki responded to the defendants' motion. (ECF Nos. 188, 217.) The

---

[1] The defendants filed a motion for summary judgment on December 13, 2010 that contained information in violation of Rule 5.2 of the Federal Rules of Civil Procedure. (ECF No. 179) (sealed). At the court's March 17, 2011 hearing, the Clerk of Court was directed to seal the defendants' motion and the defendants were ordered to re-file redacted documents with the court. (See Minute Entry, ECF No. 201.) The defendants' motion for summary judgment filed March 21, 2011 (ECF No. 208) is a redacted version of their previously filed motion for summary judgment, but is otherwise identical.



defendants filed a reply. (ECF No. 190.) In addition, the defendants filed responses to Wojcicki's motions (ECF Nos. 176, 216) and Wojcicki filed replies ECF Nos. 178, 219, & 220). Having carefully considered the parties' submissions and the record in this case, the court finds that the defendants' motions should be granted and Wojcicki's motions should be denied.

## BACKGROUND

This matter arises out of Wojcicki's former employment with Defendant Aiken Technical College ("Aiken Tech"). Wojcicki, who is of Polish national origin and is over the age of forty, worked as an instructor and program coordinator for the electromechanical engineering technology program at Aiken Tech. In 2001 Wojcicki began participating in the Teacher and Employee Retention Incentive ("TERI") program, which essentially permits South Carolina educators who are eligible for retirement to continue working for a state employer for up to an additional five years. Wojcicki alleges that when Defendant Tilt became the Vice President for Technical Education, Tilt and others made administrative decisions that "killed" Wojcicki's educational program. He further alleges that Tilt began interrogating him daily. He also contends that Defendant DesRocher created a hostile work environment by making jokes about Polish people.

In late August 2004, Wojcicki suffered his third heart attack since 1997. He received twelve weeks of leave pursuant to the Family Medical Leave Act ("FMLA") plus some additional leave time. Wojcicki asserts that while he was on leave, the defendants prevented him from entering his campus office and that a security officer was called to escort him from the Aiken Tech campus.

Shortly before the commencement of the spring 2005 semester, Wojcicki initiated the state retirement process and ended his TERI participation, effectively ending his employment with Aiken Tech. Wojcicki asserts that he was forced to retire by the defendants. In February 2005, Wojcicki



filed an administrative charge of employment discrimination with the South Carolina Human Affairs Commission ("SCHAC"), the deferral agency in South Carolina for the federal Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based upon his age, national origin, and disability. He also alleged retaliation for filing prior administrative charges with SCHAC.[2] The EEOC dismissed Wojcicki's February 2005 charge and issued a right-to-sue letter. The instant federal action followed.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is

---

[2] The record shows that the February 2005 charge was Wojcicki's fifth charge of discrimination against Aiken Tech. One of those previous charges resulted in a federal lawsuit, which was resolved when the district court enforced a settlement agreement Wojcicki had entered into with Aiken Tech in 2003. (See Wojcicki v. Aiken Tech College, C/A No. 1:02-2098-HFF.)



"genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Proof**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate,



nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Wojcicki's Claims**

    **1.     Title VII and ADEA Discrimination Claims**

To obtain relief based upon alleged discrimination under Title VII or the ADEA, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing at a level that met the employer's legitimate expectations; and (4) he was discharged under circumstances that raise a reasonable inference of unlawful discrimination. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006) (ADEA); Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) (Title VII); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (refining the fourth element under the ADEA). Supreme Court and Fourth Circuit precedents analyzing the ADEA and Title VII show that an inference of unlawful discrimination may be demonstrated in a variety of ways. For example, in a Title VII case, the plaintiff may establish an inference of discrimination by showing that the position was filled with someone outside the



protected class. Similarly, in an ADEA case, he may show that the position was filled by someone substantially younger. O'Connor, 517 U.S. at 310-12; Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*) (Title VII & ADEA).

With regard to the second element, for disparate treatment cases an adverse employment action has been defined as "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.' " Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). It must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Here, the only allegation Wojcicki raises that meets the standard for an adverse employment action is his contention that Aiken Tech forced him to retire by eliminating his program.[3] On this point, Wojcicki merely raises general allegations that the defendants treated him poorly and that the defendants were incompetent, making administrative decisions that he argues adversely affected his educational program to the detriment of South Carolina in general. Such allegations, even taken in the light most favorable to Wojcicki, are insufficient evidence to satisfy the *prima facie* test. As an initial matter, to the extent he contends that the defendants forced him out by eliminating the

---

[3] Wojcicki appears to complain that Defendant DesRocher received a higher salary and more time off than other instructors. However, this grievance appears to be made in conjunction with Wojcicki's general opinion that DesRocher was not qualified for the position he held at Aiken Tech. It does not appear that Wojcicki is asserting that he was paid less than similarly situated instructors due to his age or national origin; to the extent he attempts to do so, such a claim is insufficiently pled and unsupported in this record.



program he coordinated, such an assertion is unsupported.[4] Wojcicki has presented absolutely no evidence refuting Aiken Tech's showing that the program was not eliminated until after Wojcicki retired. (Wojcicki Dep. at 50-51, ECF No. 208-5 at 51-52.) Moreover, even if Wojcicki had presented evidence from which a reasonable jury could find in his favor regarding this point, nothing in the record tends to show that Aiken Tech's decision to discontinue the program or the decisions that Wojcicki contends adversely affected it were motivated by Wojcicki's national origin or age. Based on this record, no reasonable jury could find that Wojcicki was a victim of unlawful discrimination based upon his age or national origin. Merritt, 601 F.3d at 294-95.

### 2.    ADA

The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).[5] To establish a *prima facie* case of employment discrimination based upon a disability, a plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his

---

[4] To establish that he was constructively discharged, a plaintiff must show that his employer created intolerable working conditions in a deliberate effort to force him to resign. Whitten v. Fred's, Inc., 601 F.3d 231, 248 (4th Cir. 2010); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995). A constructive discharge occurs when a reasonable person in the employee's position would have felt compelled to resign. See Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). However, "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Heiko v. Colombo Sav. Bank, 434 F.3d 249, 262 (4th Cir. 2006) (internal citations & quotations omitted).

[5] The facts giving rise to this action predate the effective date of the 2008 amendments to the ADA; thus, it appears that the earlier version of the statute would apply. Accordingly, all references to the ADA statutes in this Report and Recommendation are to the statutes as they existed prior to January 1, 2009, the effective date of the 2008 amendments.



employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination.  See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Haulbrook v. Michelin N. Am., 252 F.3d 696 (4th Cir. 2001).  Under the ADA, a "disability" includes:

>     (A)    a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>     (B)    a record of such an impairment; or
>     (C)    being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Here, Wojcicki cannot show that he was a qualified individual with a disability.  The impairment that he apparently relies upon in asserting this claim is his heart condition that resulted in three heart attacks.  However, case law establishes that heart disease does not constitute a disability under the ADA unless it results in substantial limitation of the plaintiff's major life activities.  See, e.g., Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1227 (11th Cir. 1999); Weber v. Strippit, Inc., 186 F.3d 907, 913-14 (8th Cir. 1999); Korzeniowski v. ABF Freight Sys., Inc., 38 F. Supp. 2d 688, 692-93 (N.D. Ill. 1999); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996).  Here, the parties do not dispute that after a reasonable recovery period Wojcicki returned to work after his first two heart attacks, and that he was planning after the third heart attack to return to work.[6]  (ECF No. 188-2 at 21-22) (correspondence from Wojcicki's attorney to Aiken Tech requesting that Wojcicki be allowed to return from his FMLA leave to his

---

[6] Although Aiken Tech argues that it had assigned Wojcicki classes to teach in the spring 2005 semester prior to learning that Wojcicki was retiring, the defendants have presented no evidence in support of this assertion, so the court has not considered it.



position at Aiken Tech). On this record, no reasonable jury could find that Wojcicki had a disability within the meaning of the ADA.

### 3. Retaliation

Title VII, the ADEA, and the ADA make it unlawful for an employer to retaliate against an employee for engaging in activity protected by those statutes. See 42 U.S.C. §§ 12203, 2000e-3(a); 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, Wojcicki must show: (1) that he engaged in protected activity; (2) that a materially adverse action was taken against him such that a reasonable worker might well be dissuaded from making or supporting a charge of discrimination; and (3) that there was a causal link between the protected activity and the adverse action. See Lettieri v. Equant Inc., 478 F.3d 640, 650 & n.2 (4th Cir. 2007) (Title VII); Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 706 (4th Cir. 2001) (ADA); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998) (Title VII); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (clarifying the test with regard to the second element). To meet this test, a plaintiff must show that the adverse action was taken " 'because the plaintiff engaged in a protected activity.' " Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007) (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)).

Wojcicki asserts that he was retaliated against for filing previous charges of discrimination. Prior to the February 2005 charge which led to the instant lawsuit, Wojcicki's most recent charge of discrimination against Aiken Tech was filed in August 2003. Although Wojcicki's filings are persistently vague as to the timeline of alleged events, most of the conduct about which he complains



as constituting retaliation apparently occurred in the fall of 2004.[7] The lapse of over a year between the protected activity and the alleged retaliatory conduct negates any inference of a causal connection based upon temporal proximity alone. See Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229 (4th Cir. 2006) (*per curiam*) (Title VII) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment); Tolley v. Health Care & Retirement Corp., Inc., 133 F.3d 917 (4th Cir. 1998) (Table) (ADEA) (finding four months is too long). Moreover, Wojcicki has presented no evidence other than time that would support an inference that the events of which he complains occurred because of his previous complaints of discrimination. His speculation that he was adversely treated because of his prior administrative charges is utterly unsupported. See Holland, 487 F.3d at 218.

### 4. Hostile Work Environment

Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17,

---

[7] Wojcicki's filings do not make clear whether he is alleging that DesRocher's alleged Polish jokes were made in retaliation for previous administrative charges or whether that conduct is alleged in connection with his hostile work environment claim, discussed below. To the extent he raises this conduct in connection with his retaliation claim, the court observes that it allegedly commenced prior to Wojcicki's 2003 charge and therefore cannot reasonably be said to have occurred *because* of his 2003 charge. Similarly, his allegations of poor treatment predating his 2003 charge are not properly before the court as part of the instant federal claims, as they could have been raised in Wojcicki's prior lawsuit, which was resolved by settlement. Wojcicki v. Aiken Tech College, C/A No. 1:02-2098-HFF.



21 (1993) (internal quotation marks & citations omitted) (Title VII).  However, "[w]orkplaces are not always harmonious locales."  E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII).  Moreover, federal employment statutes are not "general civility code[s]."  Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Shirer v. Tri-County Elec. Co-op., Inc., C/A No. 5:07-1156-MBS, 2009 WL 2900767, *8 (D.S.C. Sept. 9, 2009) (unpublished) (Title VII & ADEA).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that "(1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  Baqir, 434 F.3d at 745-46.

To meet the second element, a plaintiff must show that "but for" one of these protected traits, he would not have been a victim of harassment.  See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (Title VII & ADEA).  The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic.  See Graham v. Prince George's Cnty., 191 Fed. Appx. 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80; Shirer, 2009 WL 2900767, at *8.

To meet the third element, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment.  Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746.  When analyzing this element, courts examine the totality of the circumstances,



considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

Although Wojcicki complains that Defendant DesRocher made offensive remarks about Polish people, the record does not show that these remarks rose to the "severe and pervasive" standard such that it unreasonably interfered with Wojcicki's work performance. (Investigation into Harassment Complaint, ECF No. 188-2 at 4-8) (finding that there was no evidence to substantiate Wojcicki's specific allegations that DesRocher made offensive remarks regarding Wojcicki's national origin and concluding that Wojcicki had at times joined in the Polish jokes and that both Wojcicki and DesRocher had not behaved professionally at all times); (see Wojcicki Depo. at 61-63, ECF No. 208-5 at 62-64 .)  Further, although he vehemently complains about Defendant Tilt "interrogating" Wojcicki about the administration of his educational program—questioning which Wojcicki characterizes as "torture" because it increased his stress and aggravated his heart condition—he presents absolutely no evidence that this alleged conduct was because of his age or national origin. See Graham, 191 Fed. Appx. at 204.  Similarly, the record is devoid of any evidence that Aiken Tech's conduct in denying Wojcicki access to campus while he was on sick leave, even if such action could be considered sufficiently severe and pervasive to meet the requisite standard,



resulted from his age or national origin. Consequently, he has failed to make out a *prima facie* case of a hostile work environment actionable under Title VII or the ADEA.[8]

## RECOMMENDATION

Wojcicki's federal employment discrimination claims fail as a matter of law. Accordingly, the court recommends that the defendants' motions for summary judgment with regard to these claims be granted and that Wojcicki's motions be denied. In light of this recommendation, the court further recommends that Wojcicki's state law claims be dismissed pursuant to 28 U.S.C. § 1367(c).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 16, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[8] To the extent Wojcicki's allegations raise a claim of intentional infliction of emotional distress or negligence, these state law claims should be dismissed under 28 U.S.C. § 1367(c).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).