IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Joseph Wojcicki, ) | |
| ) | C.A. No. 1:06-cv-00461-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Aiken Technical College; Ms. Susan A. ) | |
| Winsor, ex Graham ATC president; Mr. ) | |
| William Tilt, Associate Vice President of ) | |
| Technical Education; Mr. Thomas ) | |
| DesRocher, Program Coordinator; and ) | |
| Mr. Lee Powell, Human Resources Director, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Joseph Wojcicki is a former employee of Aiken Technical College, which is located in Graniteville, South Carolina. Plaintiff, proceeding pro se, filed a complaint against Defendants on February 15, 2006, alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; Americans with Disabilities Act (ADA), 42 U.S.C. §§ 1201, et seq.; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, et seq.; and under unspecified state laws. This matter is before the court on the parties' cross-motions for summary judgment. ECF Nos. 174, 179, 208, 212. Plaintiff filed a motion for summary judgment on November 4, 2010. Defendants filed a response to Plaintiff's motion on November 22, 2010 and Plaintiff filed a reply on December 1, 2010. Defendant filed a motion for summary judgment on December 13, 2010. Following the issuance of an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), Plaintiff responded to Defendants' motion for summary judgment on January 18, 2011 and Defendant replied on January 28, 2010. Also before the court is Plaintiff's motion for default judgment, which was filed on November 4, 2010 with his motion

for summary judgment. ECF No. 174. Defendants responded to the motion for default judgment in their response to Plaintiff's motion for summary judgment.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the within action was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On June 16, 2011, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendants' motion for summary judgment be granted and that Plaintiff's motions be denied. Plaintiff filed objections to the Report and Recommendation ("Plaintiff's Objections") on July 5, 2011.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## Facts

Plaintiff is over the age of sixty and is of Polish national origin. Plaintiff started working for Defendant Aiken Technical College ("ATC") on January 9, 1990 as a program coordinator for the electromechanical engineering technology and process control program. Plaintiff alleges that in the late 1990's, ATC received funding specifically allocated for Plaintiff's technology program but that ATC allocated it elsewhere. ECF No. 229, p. 12. On January 26, 2000, Plaintiff filed his first complaint with the South Carolina Human Affairs Commission ("SCHAC"), the deferral agency in South Carolina for the federal Equal

Employment Opportunity Commission ("EEOC"), alleging discrimination by Aiken Technical College against him based on age and national origin. ECF No. 179-2, p. 2. The SCHAC issued a dismissal and notice of right to sue letter on October 17, 2000. In 2001, Plaintiff began participating in the Teacher and Employee Retention Incentive ("TERI") program, which permits South Carolina educators who are eligible for retirement to continue working for a state employer for up to an additional five years. According to Plaintiff's deposition, it appears that in the early 2000's Defendant Tilt became Vice President of Technical Education at ATC and became Plaintiff's supervisor. ECF No. 208-5, pp., 30, 33.

In April 2002, Plaintiff filed what appears to be his second charge with the SCHAC alleging that Defendant ATC retaliated against him for filing his first SCHAC charge by creating a stressful working situation for Plaintiff. Plaintiff also alleged that the intolerable working conditions were a product of discrimination based on his national origin, age and disability. Plaintiff alleged that Defendant was aware of Plaintiff's medical conditions and that stress worsens his condition, but Defendant still subjected Plaintiff to a stressful working environment. On January 3, 2003, the SCHAC dismissed the complaint due to a prior court proceeding.[1]

In approximately 2002, Defendant DesRocher was hired as a program director of the same technology program in which Plaintiff was working. Plaintiff alleges that between 2002 and 2004, Defendants Tilt and DesRocher wanted to "replace" Plaintiff with DesRocher and were determined to have Plaintiff quit his job by "destroying" Plaintiff's technology program and creating a hostile work environment. On March 28, 2003, Plaintiff filed what appears to be his third charge of discrimination with the SCHAC alleging discrimination based on national origin and retaliation. Specifically, Plaintiff complained that he had been subjected to offensive remarks about Polish people by Defendant DesRocher and that the remarks had increased since

---

[1] It is unclear based on the record what prior court proceeding SCHAC is referring to.

his previous SCHAC charge of discrimination. On July 20, 2003, Plaintiff and Defendant ATC entered into a mediated court settlement regarding Plaintiff's third SCHAC complaint.

Plaintiff also filed an internal complaint with the Human Resources Department at Aiken Technical College on November 4, 2003, alleging that Defendant DesRocher created a hostile work environment by making offensive jokes about Polish people. On November 24, 2003, the Human Resources Department concluded its investigation into Plaintiff's complaint. Defendant DesRocher admitted that some of his comments could be perceived as offensive to people of Polish origin. ECF No. 179-5, p. 4. Plaintiff concedes that Defendant Tilt reprimanded DesRocher and told him not to make Polish jokes. ECF No. 208-5, p. 65. The investigation also found that Plaintiff had also made Polish jokes and that both Defendant DesRocher and Plaintiff had acted unprofessionally with one another. The Human Resources Department recommended the monitoring of Plaintiff and Defendant's relationship and required all employees to undergo anti-harassment training. ECF No. 179-4.

Plaintiff alleges that between 2002 and 2004, his work load increased because Defendant Tilt required him to do inventory of technology equipment and report to him daily. Defendant DesRocher did not have a full course load at this time, so he was tasked with rearranging engineering technology and would provide Defendant Tilt with a list of questions related to equipment to ask Plaintiff about. ECF No. 208-5, p. 85. Plaintiff alleges that Defendant Tilt frequently "interrogated him" about work-related issues and equipment. Id. Further, Plaintiff alleges that the extra work caused him to work overtime for which he was not paid. Plaintiff also alleges that he requested that Defendant ATC provide him with an assistant during this time period of 2002-2004 to assist him with the additional work and that his request was denied.

Plaintiff states that Defendants Tilt and DesRocher cancelled Plaintiff's 2004 summer

4

classes and as such Plaintiff was not getting paid for teaching summer classes. However, Tilt sought Plaintiff's assistance with helping a few students fulfill their curricular requirements. Plaintiff agreed and conducted a number of education-related activities in the summer of 2004, which ATC refused to pay him for. Plaintiff complained to Defendants regarding their nonpayment and presented them with an invoice for his work. ECF No. 16-1. In August 2004, Defendants Tilt and DesRocher's requested that Plaintiff make adjustments to Plaintiff's teaching schedule and curriculum for the fall 2004 semester, so that DesRocher could teach Plaintiff's morning classes. This readjustment required that Plaintiff present a syllabus and course materials to Defendant DesRocher in a short time frame. Plaintiff alleges that this "last minute" request created a stressful and hostile environment which contributed to Plaintiff's third heart attack in late August 2004. ECF No. 208-5, p. 54-55. Plaintiff received twelve weeks of leave pursuant to the Family Medical Leave Act ("FLMA") plus some additional leave time; thus, according to Plaintiff, his sick leave would have extended into December 2004. On November 16, 2004 Defendants' counsel sent a letter to Plaintiff's counsel indicating that Plaintiff was "free to return to work without any restrictions or accommodations." ECF No. 188-2, pp. 23-24. Plaintiff asserts that in December 2004, Defendants prevented him from entering his campus office and that a security officer was called to escort him from the Aiken Technical College campus. Plaintiff stated that this event occurred after he was released from the hospital. ECF No. 208-5, p. 77-78. Plaintiff's TERI participation ended on January 3, 2005, at which point he was effectively retired. ECF No. 179-6. Plaintiff asserts that he was forced to retire by Defendants. However, Defendants allege that Plaintiff voluntarily retired, putting them in a difficult situation to find a replacement for him for the spring 2005 semester. Plaintiff alleges that ATC cancelled its technology program after he retired, because they were unable to find

someone to replace Plaintiff.  ECF No. 208-1.

In February 2005, Plaintiff filed an administrative charge of employment discrimination with the SCHAC, alleging discrimination based on age, national origin and disability, as well as retaliation.  Plaintiff claimed that Defendants were aware of his fragile heart condition and sought to replace him during his FMLA leave with Defendant DesRocher, who was younger and not disabled.  The EEOC dismissed Plaintiff's administrative charge and issued a right to sue letter.  Plaintiff filed the within federal action on February 16, 2006.

## Discussion

*Standard of Review*

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the application law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is genuine if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must set forth specific facts demonstrating a genuine issue for trial.  Anderson, 477 U.S. at 252.  However, there must be

sufficient evidence supporting the claimed factual dispute so as to require a jury or judge to resolve the parties' differing version of the truth at trial. Id. at 249. A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. Latif v. Cmty. College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

*Plaintiff's Title VII and ADEA Discrimination Claims*

The Magistrate Judge found that Plaintiff failed to meet the prima facie requirements for a Title VII or ADEA discrimination claim because Plaintiff produced insufficient evidence to show that he suffered an adverse employment action. The Magistrate Judge found that Plaintiff's allegations that the defendants treated him poorly and that administrative decisions were made adversely affecting his technology program to the determinant of the state of South Carolina are insufficient to satisfy the prima facie test for discrimination. The Magistrate Judge also found that ATC's decision to discontinue Plaintiff's technology program was not an adverse action designed to force Plaintiff to retire, because ATC only discontinued the program after Plaintiff had already retired. ECF No. 208-5, pp. 51-52. Further, the Magistrate Judge found no evidence in the record to suggest that Defendants' decision to discontinue Plaintiff's technology program was motivated by Plaintiff's national origin or age. Plaintiff objects to the Magistrate Judge's findings that he suffered no adverse employment action on a number of different grounds.

Under Title VII and the ADEA, a plaintiff must demonstrate that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) at the time of the adverse action he was performing at a level that fulfilled his employer's legitimate expectations; and 4) the circumstances surrounding the adverse action raise a reasonable inference of unlawful

7

discrimination based on plaintiff's membership in the protected class. An adverse employment action is defined as a discriminatory act that adversely affects the terms, conditions or benefits of the plaintiff's employment. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006); Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). An adverse action must constitute a significant change in employment status, such as a hiring, firing, failure to promote, reassignment with significantly different job responsibilities, or a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Plaintiff objects to the Magistrate's finding that ATC did not force Plaintiff to retire by destroying his program. The parties did not dispute whether or not Plaintiff is a member of the protected classes based on his nationality and age, so the court assumes that Plaintiff met the first prong. However, the court agrees with the Magistrate Judge's finding that Plaintiff suffered no adverse action as a result of the cancellation of his program and refers to the fact that Plaintiff's program was cancelled only after he retired and not before. ECF No. 208-5, p. 51. Plaintiff also supports his allegation that he was forced to retire with the fact that he was not being paid for a part of his FMLA sick leave and was denied entry to the campus while on sick leave. ECF No. 208-5, p. 78. The court disagrees with Plaintiff. Defendant's November 16, 2004 letter to Plaintiff's counsel indicated that Plaintiff was welcome to return to work after he finished his sick leave. ECF No. 188-2, pp. 23-24. The record also indicates that in January 2005, Defendants were notified that Plaintiff was removed from the TERI program, which effectuated Plaintiff's retirement. The Plaintiff presents no evidence to suggest that Defendants contacted the State Budget and Control Board and ended Plaintiff's participation without his consent. ECF No. 179-6. Therefore, no reasonable juror could find that Defendant had forced Plaintiff to retire or that Defendant was unwilling to re-hire Plaintiff after his sick leave was complete.

Plaintiff also states that Defendant ATC's act in blocking Plaintiff's entry onto campus constitutes an adverse action. The court disagrees. Plaintiff stated that he was still on sick leave in December 2004 when he was denied entry to the campus; therefore, this incident did not prevent Plaintiff from fulfilling his professional duties. Further, Defendants did not indicate that denying Plaintiff entry to campus during this incident was reflective of their intent to terminate his employment. Rather, Defendants' letter referenced hereinabove expressly permitted Plaintiff to return to work. Although Plaintiff may have been alarmed by this incident, it did not present a significant change in employment status and therefore, was not an adverse action. ECF No. 208-5, p. 77-78.

Plaintiff also states that Defendant Tilt's request that Plaintiff perform extra duties and report to him daily was an adverse employment action. Plaintiff alleges that the extra duties were not within his job description and required him to work overtime for which he was not paid. Even assuming that the extra duties did constitute an adverse employment action, Plaintiff concedes that these duties were given to him because of his knowledge in the technology field and "probably not" because of his age or national origin. ECF No. 208-5, p. 97. Therefore, the requirement under Title VII and the ADEA that the adverse action raise a reasonable inference of discrimination based on his membership in a protected class, is not met. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006).

Plaintiff contends that he suffered an adverse employment action for the purposes of his ADEA claim because Defendant ATC refused to provide him with an assistant but provided assistants to younger instructors. Plaintiff alleges that there were some younger instructors who had assistants while he did not, but presents no evidence to show whether these instructors were similarly situated to him, how many of them there were or whether there were other instructors

9

who also did not have assistants. ECF No. 188, pp. 16, 19. Therefore, even if Plaintiff can make a prima facie showing of discrimination under the ADEA, Plaintiff does not meet his burden of persuasion because he fails to show that it was because of his age that he did not receive the benefit of an assistant as did the younger instructors. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-12.

Lastly, Plaintiff asserts that Defendant Graham's failure to pay Plaintiff for extra duties performed outside of his professional responsibilities, particularly, his assistance with students during the summer semester, constitutes an adverse employment action. Plaintiff states that Defendants Tilt and DesRocher cancelled Plaintiff's summer classes and as such Plaintiff was not getting paid for teaching summer classes. However, Tilt sought Plaintiff's assistance with helping a few students fulfill their curricular requirements. Plaintiff agreed and conducted a number of education-related activities in the summer of 2004, for which he presented the Defendants an invoice. ECF No. 16-1. Construing the facts in a light most favorable to the Plaintiff and assuming that Defendants failed to compensate Plaintiff for required work, Plaintiff presents no evidence that nonpayment was related to his membership in any protected group. Therefore, the adverse action of nonpayment does not lead to an inference of discrimination under Title VII or ADEA.

Assuming that some of Plaintiff's allegations of mistreatment rise to the level of adverse employment actions, Plaintiff has not satisfied the requirement under Title VII and the ADEA that the adverse action(s) raise a reasonable inference of discrimination based on Plaintiff's membership in a protected class. Id. at 311-12.

*ADA Claims*

The Magistrate Judge found that Plaintiff was not entitled to relief under the ADA

because Plaintiff's heart condition did not render him a qualified individual with a disability. Plaintiff objected to the finding that he was not entitled to relief under the ADA by arguing that Defendants Tilt and DesRocher knew of his heart condition and intentionally created stress for him until he quit. ECF No. 229, p. 16.

The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case of employment discrimination based upon a disability, a plaintiff must show as an initial matter that he is a qualified individual with a disability. Under the ADA, "disability includes a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Id. at § 12102(2).

Plaintiff's heart condition and related heart attacks do not qualify him as a qualified individual with a disability. Plaintiff's condition did not result in a substantial limitation of his major life activity of working. The parties do not dispute that after a reasonable recovery period, Plaintiff was able to return to work after his first two heart attacks and was given permission by his doctor to return to work after his third heart attack. Plaintiff's objection is without merit.

*Retaliation Claims Under Title VII, ADEA, and ADA*

The Magistrate Judge found that Plaintiff failed to establish a prima facie case of retaliation because he could not prove that any adverse action taken against him by Defendants was because of the Plaintiff's previous filings of discrimination charges with the SCHAC. The Magistrate Judge found that absent any additional evidence connecting the allegedly retaliatory actions to the Plaintiff's filing of the charges, the lapse of over one year between the filing of the 2003 SCHAC charge and most of the conduct Plaintiff complained of from 2004, negates any inference of a casual connection based upon temporal proximity alone. See Pascual v. Lowe's

Home Centers, Inc., 193 F. App'x. 229 (4th Cir. 2006).

Plaintiff objects on the grounds that the Magistrate Judge measured the date of his protected activity from the filing date of his SCHAC charge instead of during the pendency or final disposition of the SCHAC investigation and so the temporal proximity to the retaliatory actions is closer than the Magistrate Judge finds. Plaintiff also objects on the grounds that all of Defendants' adverse actions discussed hereinabove in reference to Plaintiff's discrimination claims were also in retaliation for SCHAC charges Plaintiff filed in 2000, 2002 and 2003.

The passage of time alone cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." Id. at 233. The Fourth Circuit found that a period of three to four months between the protected activity and the termination was too long to establish a causal connection by temporal proximity alone.

Plaintiff's first objection is without merit, because the date of his protected activity is found to be when the employer first found out that Plaintiff had filed an SCHAC charge, not during the pendency or final disposition of a charge. Id. Plaintiff's generalized allegation that Defendants' conduct from 2002-2004 was a result of his SCHAC charges from 2000, 2002, and 2003, without any further evidence, is insufficient to prove Plaintiff's burden of persuasion that the adverse actions were related to the protected activity. Therefore, the court finds that Plaintiff cannot obtain relief for retaliation under Title VII, the ADEA or the ADA.

*Hostile Work Environment Claims Under Title VII & ADEA*

The Magistrate Judge found that Defendant DesRocher's remarks about Polish people were not severe and pervasive enough to create an abusive working environment. Plaintiff contends that Defendant DesRocher's comments met the requisite standard of hostility and

contributed to his work-related stress which he alleged resulted in his third heart attack.

To state a claim for hostile work environment, a plaintiff must show that 1) the harassment was unwelcome; 2) the harassment was based on his membership in a protected class; 3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) there is some basis for imposing liability on the employer. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21; Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).

Defendant DesRocher's remarks about Polish people, while offensive, were not severe or pervasive enough to create an abusive environment. Id. Plaintiff himself conceded that the "Polish jokes . . . [are] not really the factor most important in the case." Plaintiff continues to say that the jokes were just another way Defendant was trying to cause stress to Plaintiff. ECF No. 208-5, p. 65. In the internal investigation following Plaintiff's complaint regarding Defendant's remarks, Defendant DesRocher admitted that some of his comments could be perceived as offensive to people of Polish origin. ECF No. 179-5, p. 4. Plaintiff concedes that Defendant Tilt reprimanded DesRocher and told him not to make Polish jokes. ECF No. 208-5, p. 65. Defendant DesRocher's offensive remarks occurred only a few times; that coupled with the fact that Plaintiff does not allege that any of the Defendants continued to make offensive remarks about Polish people after this investigation concluded in November 2003, demonstrates that no reasonable juror could find that the offensive conduct rose to the level of severe and pervasive enough to create an abusive atmosphere. ECF No. 179-4, pp. 1-5.

The Magistrate Judge also found that Plaintiff failed to make a prima facie case for hostile work environment on the ground that Defendant Tilt "interrogated" or constantly questioned him, because Plaintiff presented no evidence that this alleged conduct was related to

Plaintiff's age or national origin. As such, the Magistrate Judge found that Plaintiff set forth no evidence to fulfill the second prong of a hostile environment claim requiring that plaintiffs show that "but for" membership in a protected class, he or she would not have been a victim of harassment. Causey, 162 F.3d at 801. Plaintiff objects to the Magistrate's determination, stating that Defendant Tilt's questioning constituted a hostile work environment.

Plaintiff stated that the "interrogation" itself was often related to inventory or location of technology equipment. ECF No. 208-5, p. 107. Plaintiff explained that Defendant DesRocher did not have a full course load so he was tasked with rearranging engineering technology and would provide Defendant Tilt with a list of questions related to technology equipment to ask Plaintiff about. ECF No. 208-5, p. 85. Even in Plaintiff's objections, Plaintiff neither asserts nor can point to any evidence showing that Defendant Tilt's conduct in questioning Plaintiff and requiring Plaintiff to report daily to him, were motivated by or related to Plaintiff's age or national origin.

Also, the Magistrate Judge found that Defendant ATC's action in denying Plaintiff access to the campus and his office was not sufficiently severe to create an abusive work environment. The plaintiff objects to the Magistrate Judge's conclusion. The court concludes that even if Defendant's actions created a hostile work environment, Plaintiff presents no evidence that the denial was related to Plaintiff's age or national origin and therefore failed to make the prima facie case for hostile work environment.

Plaintiff raises a number of issues, set forth below, for the first time in his Objections to the Magistrate Judge's Report and Recommendation. Plaintiff contends that Defendants' decision to reallocate funding from his program to other programs on campus created a hostile environment. This objection is without merit, because Plaintiff makes no allegation that the

14

funding was reallocated because of Plaintiff's membership in a protected group. ECF No. 229, p. 12.

Plaintiff also alleges that Defendants Tilt and DesRocher's last minute change of Plaintiff's teaching schedule and curriculum in the fall of 2004, requiring Plaintiff to make adjustments so that DesRocher could teach the morning classes, created a stressful and hostile environment that contributed to his subsequent heart attack. ECF No. 208-5, p. 54-55.

The court finds no merit in this objection. Plaintiff himself explained that Defendants requested that Plaintiff change the curriculum because not enough students signed up for Defendant DesRocher's courses to fill his class load. Id. This explanation along with the fact that Plaintiff presents no evidence that Defendants' request was related to Plaintiff's national origin or age, demonstrates that Plaintiff fails to make a prima facie showing of hostile work environment in this instance.

Lastly, Plaintiff presents a former student's testimony that conditions in Plaintiff's classroom were cramped, that Plaintiff's workload was heavy, and that Plaintiff should be given more assistance with his work. ECF No. 229-1. The court finds that the student's testimony is insufficient to make a prima facie case for a hostile work environment claim because the student makes no reference to whether or not these working conditions were attributable to Plaintiff's age or national origin. Furthermore, Plaintiff alleges that Defendants intentionally generated harmful vapors that were released into Plaintiff's classroom to create a hostile work environment. Defendant presents no evidence to support this allegation.

## Conclusion

After a thorough review of the Report and Recommendation, the Plaintiff's Objections, the record in its entirety, and the applicable law, the court concurs with the Magistrate Judge's

findings. The court adopts the Report and Recommendation and incorporates it herein by reference. Defendants' motion for summary judgment is granted and Plaintiff's motions are DENIED.

**IT IS SO ORDERED.**

                                                                                                         s/ Margaret B. Seymour  
                                                                                                         The Honorable Margaret B. Seymour  
                                                                                                          United States District Judge

September 30, 2011  
Columbia, South Carolina